297 So.2d 766 (1974)
Russell W. CANTELLI and Judy Kerr Cantelli
v.
Robert T. TONTI, d/b/a Robert T. Tonti Real Estate, et al.
No. 6309.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1974.
*767 David A. Marcello, New Orleans, for plaintiffs-appellants.
John M. Blanchard, New Orleans, amicus curiae.
Carr & Kollin, Patrick E. Carr, Metairie, for defendants-appellees.
Before SAMUEL, STOULIG and MORIAL, JJ.
STOULIG, Judge.
Prior to a consideration of the merits we must consider and decide our ex proprio motu order to show cause why this appeal should not be dismissed because of appellants' failure to post the devolutive appeal bond within the delays provided for in LSA-C.C.P. art. 5002. Under this codal article the last day for timely filing of the bond was December 6, 1973, and the record as constituted indicated the appeal bond was not posted until December 21, 1973.
In response to the rule, appellants showed that their attorney, acting on information elicited from the clerk's office coincidental with the filing of its motion and order for an appeal, did deposit on December 3, 1973 a check for $100 which he assumed constituted the cash bond required by the appeal. At the time of the deposit, the trial judge had neither signed the order of appeal nor set the bond. It is apparent from a cost sheet ledger filed as an exhibit in connection with this rule that the clerk's office treated the deposit as an advance for the payment of future court costs, including the charges for preparing the transcript and other incidental expenses in connection with the appeal.
Upon learning on December 21, 1973 that the bond had been set in the sum of $250, appellants voluntarily filed a personal surety bond in this amount. An examination of the cost ledger sheet reveals that *768 on the date the personal surety bond was posted, appellants had a credit of $97.75, from which no additional court costs had been deducted during the intervening period.
It is obvious that the appellants tendered the $100 deposit as a cash appeal bond under the mistaken belief that the clerk indicated this was the customary bond for a devolutive appeal; however, the clerk accepted this sum and treated it as an advance deposit against future court costs. Under the peculiar circumstances of this case, we conclude the $97.75 served as a cash appeal bond, though admittedly insufficient in amount to that later specified by the order granting the appeal; however, appellants on their own initiative cured the insufficiency prior to any court cost debits being assessed against the deposited sum.
Appeals being favored under our law and appellants' counsel at all times acting in good faith, any reasonable doubt resulting from the confusion as to the nature of the deposit and the timeliness of its posting which cannot be clarified or reconciled should be resolved in favor of maintaining the appeal. We do not intend, however, to imply that every post-trial deposit of cash with the clerk of court is sufficient to constitute an appeal bond and preserve the right of appeal. Each case must be judged on its own particular facts and circumstances.
Accordingly, the rule to show cause is satisfied and we will maintain the right of appeal.

ON THE MERITS
Plaintiffs, Mr. and Mrs. Russell Cantelli, obtained a $150 judgment against Robert T. Tonti, doing business as Tonti Realty Company, on a finding the defendant landlord wrongfully refused to return lessees' deposit in this amount at the end of the lease period. Plaintiffs appealed because the trial court did not award damages and attorney's fees authorized under the rent deposit return act of 1972 (R.S. 9:3251, et seq.).
The only question posed for our consideration is whether this legislation, passed after the confection of the lease agreement between the litigants, is applicable.
On November 14, 1970, plaintiffs signed a standard lease form with the defendant's agent for the rental of an apartment for the term beginning November 15, 1970 and ending November 30, 1971 at a rental of $165 per month. The document stipulated plaintiffs would deposit $150 as security for the faithful performance of their obligations under the lease. The lessor obligated himself to return the deposit at the termination of the lease if the lessees complied with all the terms and conditions of the lease. On November 1, 1971, defendant's manager advised Mr. Cantelli in a written memorandum that the lease would expire November 30, 1971. The message concluded "* * * As of date of expiration, your lease will be automatically terminated and you will reside at Lakeside Apartments on a month to month basis."
On July 28 or 29, 1972, Mrs. Cantelli informed the manager of the apartment complex she and her husband planned to move in mid-August. The manager replied that defendant expected more notice but promised to talk with Mr. Tonti and convey his reaction to her. In a memorandum dated August 14, 1972, the manager advised plaintiffs they owed rent at the rate of $5.39 per day for 14 days in August and further noted "Your deposit depends on how you leave the apt."
Meanwhile on July 12, 1972, R.S. 9:3251, et seq. was approved and became effective on July 28, 1972. The litigants argue at length as to its retroactive applicability to this lease originally confected before its passage; however, our conclusion obviates a resolution of this issue.
When the lessor notified the Cantellis the original lease terminated on November 30, 1971, and their occupancy thereafter *769 would be on a month-to-month basis, his failure at that time to refund the deposit and plaintiffs' failure to demand its return constituted a tacit agreement that this deposit would be one of the conditions of the new month-to-month lease. The verbal lease agreement that became effective December 1, 1971 was reconducted monthly by plaintiffs' continued occupancy of the apartment. Once plaintiffs occupied the premises for more than a week of the new monthly term the lease was reconducted for that month. See Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574 (1970). Thus, after the Cantellis stayed in the apartment for more than one week in July 1972, the terms of their lease remained effective throughout that entire monthincluding the security deposit provisionand it was during this month the rent deposit return act was adopted and became law.
The tacit agreement to retain the deposit feature of the original lease in the month-to-month agreement is demonstrated by the litigants' conduct in August 1972. When Mrs. Cantelli inquired about the deposit, defendant's manager in a written memorandum dated August 14, 1972 acknowledged the lessor's obligation to return the deposit if the conditions outlined in the original lease were fulfilled. Therefore, we hold the deposit provision of the original lease was one of the conditions carried over into the implied lease agreement of both July and August 1972.
A demand letter for the return of the deposit was written by the lessee, Russell Cantelli, on August 21, 1972, which was rejected without reason in the letter response of defendant's attorney dated August 31, 1972. A second letter of Mr. Cantelli of September 4, 1972 and a further written demand from his attorney on September 26, 1972 elicited a letter response of October 5, 1972 from defendant's attorney again denying without explanation that plaintiffs were not entitled to a return of their security deposit.
The failure of lessor to remit the deposit or assign a reason for not doing so within 30 days after the first written demand of August 21, 1972 constituted willful failure under R.S. 9:3252. Thus the first actionable event giving rise to the remedial benefits of this statute occurred on September 21, 1972. Accordingly an award of damages and attorney's fees under R.S. 9:3251, et seq. would be a prospective application of their sanctions.
R.S. 9:3252 gives a tenant from whom a security deposit was unjustly withheld "* * * the right to recover actual damages or two hundred dollars, whichever is greater, from the landlord or lessor. Failure to remit within thirty days after written demand for a refund shall constitute willful failure." R.S. 9:3253 further vests in the court discretion to award attorney's fees and costs to the injured party.
With the enactment of the rent deposit return act, the tenant who formerly had a theoretical right that was economically unfeasible to enforce is now protected from arbitrary refusals by landlords to return deposits. The case before us illustrates the wisdom of its enactment. Defendant made no attempt to justify its failure to return the security deposit by proving plaintiffs violated one of the lease provisions. Astonishingly, the defendants offered no evidence whatever, testimonial or documentary, in support of their position.
Accordingly plaintiffs are entitled to an award of $200, over and above the return of their $150 deposit. As no proof was tendered of actual damage caused by the lessor's willful noncompliance, we impose the statutory amount of $200.
In addition, R.S. 9:3252 vests in us the discretionary power to fix attorney's fees. From the record and our experience, we have considered the time involved in original consultation and research preparatory to filing suit; the drafting and filing of the pleadings; the pretrial preparation *770 and interviews; the trial court appearances on two separate occasions; the preparation of the appellate brief; and the argument before this court. We fix this fee at $750.
For the reasons assigned, our order to show cause why the appeal should not be dismissed is satisfied and dismissed, and the judgment appealed from is amended to increase the award to plaintiffs from $150 to $350 and to fix attorney's fees at $750. In all other respects, the judgment is affirmed. Defendant Robert T. Tonti, doing business as Tonti Realty Company, is to pay all costs of this litigation.
Order to show cause dismissed; amended and affirmed.